# Exhibit C-1

FILED
3/24/2021 12:09 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Marcus Turner DEPUTY

Case 3:21-cv-01065-C   Document 1-5   Filed 05/11/21   Page 2 of 17   PageID 16

NO. DC-21-03766
NO. _____

| | | |
|---|---|---|
| ROBERT HAMILTON, | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | C-68th JUDICIAL DISTRICT |
| BAS CAPITAL CORP. and | § | |
| BRUCE A. STEIN | § | |
| | § | |
| Defendants | § | DALLAS COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now ROBERT HAMILTON, Plaintiff in the above entitled and numbered cause, and files this Original Petition complaining of BAS CAPITAL CORP. and BRUCE A. STEIN, Defendants, and for such cause of action would respectfully show the Court as follows:

### I.

### Discovery Control Plan

Discovery is intended to be conducted under Level 3 of Rule 190, Tex. R. Civ. P.

### II.

### Statement of Relief Sought

Pursuant to Rule 47[c] of the Texas Rules of Civil Procedure, the Plaintiff seeks monetary relief over greater than $1,000,000.00.

### III.

### Parties

l.      Plaintiff is a resident of Denton County, Texas.

2.      Defendant **BAS CAPITAL CORP.** ("BAS") is a corporation organized under the laws of a state other than Texas, and has at all material times involved herein,

---

transacted business in this state, and this Defendant does not maintain a regular place of business in this state.

Defendant has appointed the Secretary of State of the State of Texas as its agent to receive and accept process in causes of action arising out of such business done in this State and which are the basis of this lawsuit; and the Secretary of State may be served at State Capitol, Capitol Station, Austin, Texas 78711. The Secretary of State will then forward a copy of such process by registered or certified mail to the address of the defendant at **5296 Bears Paw Circle, Memphis, Tennessee 38120.**

In compliance with Tex.Civ.Prac.& Rem.Code §17.045 (Vernon 1986), the home or home address of the non-resident Defendant is: BAS Capital Corp., **5296 Bears Paw Circle, Memphis, Tennessee 38120.**

3.      Defendant **BRUCE A. STEIN** is a resident of the State of Tennessee and has an office located at 5296 Bears Paw Circle, Memphis, Tennessee 38120. He has at all times material hereto done business in the State of Texas and is now doing business in the State of Texas, and this Defendant does not maintain a regular place of business in this state.

Defendant has appointed the Secretary of State of the State of Texas as his agent to receive and accept process in causes of action arising out of such business done in this State and which is the basis of this lawsuit. The Secretary of State may be served at State Capitol, Capitol Station, Austin, Texas 78711. The Secretary of State will then forward a copy of such process, by registered or certified mail, return receipt requested, to the address of the defendant at **5296 Bears Paw Circle, Memphis, Tennessee 38120.**

In compliance with Tex.Civ.Prac.& Rem.Code §17.045 (Vernon 1986), the home or home address of the non-resident Defendant is: Bruce A. Stein,  **5296 Bears Paw Circle, Memphis, Tennessee 38120.**

IV.

Jurisdiction; Venue

The Court has jurisdiction over the parties and the subject matter of this suit; venue is proper in Dallas County, Texas, the county in which the cause of action or a part thereof arose.

V.

Background Facts

This case involves breach of fiduciary duties, breach of contract and misrepresentations whereby Defendants acted as Plaintiff's financial and investment adviser. Defendant Stein, through Defendant BAS, is registered and licensed to do business with the Texas State Securities Board as an Investment Advisor Representative.

In connection with registering with the State of Texas as an Investment Advisor Representative, Stein was required to submit a Form U4 to the State Securities Board. Stein expressly consented in the Form U4 that any action or proceeding against him arising out of or in connection with the offer or sale of securities, or investment advisory services or out of the violation or alleged violation of the laws of the State of Texas, may be commenced in any court of competent jurisdiction and proper venue by service of process upon the Secretary of State of Texas, as if Stein were a resident of, and had been lawfully served with process in, the State of Texas.

Mr. Stein traveled to Texas to meet with the Plaintiff in connection with the investment advisory services he rendered to the Plaintiff. Plaintiff and BAS entered into a written client Agreement in the State of Texas, whereby Defendants were authorized to receive a specified fee for the investment advisory services rendered to the Plaintiff. Stein, acting in his capacity as President of BAS, traveled to Texas, multiple times to meet with Plaintiff and provide investment advisory advice in the State of Texas, and for other purposes related to the business of BAS in the State of Texas.

Plaintiff is a retired airline pilot from American Airlines. He first met Stein in 2009. At the time, Stein was a registered investment advisor and broker with Raymond James & Associates, Inc.  Although Stein resided in Tennessee, he held himself out as an investment advisor who managed individual investment portfolios of Texas investors like himself, for a fee that was measured by a percentage of the assets managed.

Stein was terminated in 2009 from Raymond James & Associates, Inc. for unauthorized trading in a client's account. After his termination, Stein proposed that Plaintiff continue to trust Stein to manage his assets through his new firm, BAS Capital.

Based on the trust and confidence that Plaintiff placed in Stein and the superior expertise that he had with the management of investment portfolios, the Plaintiff entered into a written Client Agreement with his firm, Defendant BAS Capital. A true and correct copy of the Agreement is attached hereto as Exhibit "A" and incorporated hereibn for all purposes.

Pursuant to the Client Agreement, Plaintiff agreed to pay Defendants a fee for managing his investment portfolio. Plaintiff also agreed to allow Defendants to manage the investment portfolio in a discretionary manner, meaning Defendants were free to manage Plaintiff's portfolio at his discretion without first consulting the Plaintiff for approval of any particular trade or overall trading strategy.  Stein executed the Client Agreement as President of BAS Capital.

Defendants agreed pursuant to the client agreement, among other things, that BAS was a registered investment advisor under the Investment Advisers Act of 1940 (which imposed fiduciary duties on registered investment advisers) and expressly acknowledged owing fiduciary duties to the Plaintiffs.  See *Securities and Exchange Commission v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 191 (1963) ("The Investment Advisers Act of 1940 thus reflects a congressional recognition 'of the delicate fiduciary nature of an investment advisory relationship ...'"); *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 471 n. 11, 97 S.Ct.

1292, 1300 n. 11, 51 L.Ed2d 480 (1977) ("Congress intended the Investment Advisers Act to establish federal fiduciary standards for investment advisers").

Plaintiff instructed Defendants to manage his investment portfolio in a prudent manner so as to achieve some growth and income without exposing the portfolio to the risk of substantial losses.

At all times involved herein, Mr. Hamilton was retired, and he entrusted his assets to Defendants for income in his retirement.

Defendants' fiduciary duty to Plaintiff required that they invest Plaintiff's irreplaceable assets in accordance with his investment objectives and in his best interest. That meant investing the portfolio in a way that would not expose the portfolio to the risk of substantial losses in principal.

Although at first Defendants seemed to manage the investment portfolio consistent with Plaintiff's stated investment objectives and risk tolerance of some growth without substantial losses of principal, in or about 2015, Defendants began concentrating the investment portfolio more heavily in equities, with an emphasis on energy sector securities.

Ultimately, Defendants concentrated the majority of Plaintiff's investable assets into energy sector equities, including stock. The concentration of the portfolio's energy sector was an investment strategy that Defendants employed to speculate on the energy sector. Unfortunately for Plaintiff, the energy sector speculation strategy employed by Defendants exposed Plaintiff investment accounts to an extremely high level of risk of substantial losses. Given the Plaintiff's investment objective and desire to minimize loss of principal, Defendants' energy-sector strategy to maximize returns while exposing the investment portfolio to a high risk of substantial losses was contrary to the investment objectives and risk tolerance and was not in Plaintiff's best interests.

The Defendants' energy sector speculation strategy backfired, as by 2020 the Plaintiff had suffered more than one million dollars in losses in the investment accounts Defendants

were managing for him.

In the last couple of years the losses became even worse. The energy sector was particularly hard hit, with the price of certain energy stocks and commodities taking unprecedented losses. The Defendants' imprudent over-concentration of Plaintiff's assets in the energy sector and in particular, the various individual positions in that sector, caused certain of Plaintiffs' accounts to lose more 90% of their value.

When the price of some of the energy stocks began a steep decline and Plaintiff expressed concern, Stein made the affirmative misrepresentation that the stock would rebound.

When Mr. Hamilton noticed that Defendants were heavily concentrating the portfolio in a particular energy sector stock, California Resources Corporation (CRC), and he again expressed concern, Stein made the misrepresentation that the stock would rebound. Yet, the portfolio invested in CRC lost over ninety percent of its value.

Plaintiff had a continuing investment advisory relationship with Defendants through 2020, and Plaintiff finally terminated their relationship with Defendants due to the heavy losses. Plaintiff has transferred his accounts to another advisory firm.

As an investment adviser, and pursuant to the Client Agreement, Defendants were at all times fiduciaries who owed Plaintiff the highest duty of care, including the duty in to invest the assets in a manner that was in the Plaintiff's best interest. Given the fact that the Plaintiff was in retirement, the fiduciary duties required Defendants to manage his portfolio in a manner to seek growth, while at all times avoiding substantial principal loses.

Defendants failed to look out for the Plaintiff's best interests through their speculative energy sector investment strategy, which caused the Plaintiff to suffer substantial losses. These breaches of fiduciary duties were ongoing and did not cease until the Plaintiff terminated the relationship in early 2021.

As a direct and proximate result of the breach of contract and the breach of fiduciary

duties in connection with the management of Plaintiff's accounts and the advice that Defendants rendered to Plaintiff, he has sustained damages in excess of one million dollars.

As Defendants had a fiduciary relationship with Plaintiff, and since the Defendants exercised discretionary control over his accounts, Plaintiff is entitled to recover not only the compensatory losses he suffered at the hands of Defendants, but also the difference between the increase in the values of appropriate indices and the return on each of his accounts while under Stein's management, during the relevant time period. In other words, Plaintiff is entitled to recover what a "well managed portfolio" would have produced. *Miley v. Oppenheimer & Co.*, 637 F.2d 318 (5th Cir. 1981).

In violation of their fiduciary duties, Defendants recommended a high risk and costly trading strategy without a reasonable basis to believe that this recommendation was suitable for him. Defendants' recommended investment strategy was unsuitable for Plaintiff in light of his financial needs, investment objectives and circumstances.

As investment advisors, Defendants owed a fiduciary duty to put the interests of the clients they advised first, to deal with clients with the utmost honesty, to disclose all conflicts or potential conflicts of interest, and to use reasonable care in providing investment advice. Defendants violated such fiduciary duties, ignored the best interests of the client, and defrauded him when he engaged in such course of conduct.

The Defendants' misrepresentations, the failures to disclose, the actions to maximize their own gains while sacrificing the Plaintiff's life savings, demonstrate the unsuitability of the recommendations, fraud, self-dealing, and scienter on the part of Defendants.

From the foregoing, one thing is clear: In gross dereliction of their duties, Stein and BAS solicited Plaintiff to make investments in a strategy of risky speculative energy sector securities, grossly unsuitable for him, given his objectives, risk tolerance, investment experience and financial status.

As a direct result of Defendants' mismanagement of his discretionary accounts,

Plaintiff had the majority of his portfolio concentrated in these risky energy sector. The concentration level compounded the risk of these already high risk investments. Given the Plaintiff's low risk tolerance and unaccredited status, Defendants had no reasonable basis for recommending that he invest he entire life savings in the private placements described above.

## The Claims

Plaintiff's claims stem directly from Defendants' violations of Texas securities laws, common law violations, including Defendants' breach of fiduciary duty, negligence, failure to supervise and violations securities industry's standards and rules of conduct. Plaintiff is alleging: (1) securities fraud; (2) common law fraud; (3) unsuitable trading strategy and purchases; (4) negligence; (5) breach of contract; (6) breach of fiduciary duty; (7) violations of the Texas Securities Act; and (8) violations of the Texas Deceptive Trade Practices Act.

This is a classic illustration of abused trust and grossly unsuitable investment recommendations, causing significant losses and damages. The Plaintiff left the investment decisions up to Defendants, who held themselves out as his registered representatives. Contrary to their legal and ethical responsibilities to Plaintiff, the Defendants did not resist the temptations posed by the conflict between their interests and those of Plaintiff.

VI.

## Breach of Fiduciary Duty

Plaintiff incorporates by reference all of the allegations contained in paragraphs I through V as fully as though set out herein.

As a result of the Defendants' relationship with Plaintiff and their financial advice, a fiduciary duty existed between Plaintiff and Defendants. Defendants breached their fiduciary duty to Plaintiff. In committing the acts and omissions described above, the Defendants breached their duties, including but not limited to their duties of loyalty and utmost good faith, duty of candor, duty to refrain from self-dealing, duty to act with

integrity of the strictest kind, duty of fair and honest dealing and duty of full disclosure.

The Defendants breached their fiduciary duties to Plaintiff in a number of ways, including but not limited to, the following:

  a.  Recommending the investments without studying it sufficiently
      to become informed as to its nature, price and financial prognosis;

  b.  Engaging in an unsuitable strategy of concentrating in the energy sector;

  c.  Self-dealing;

  d.  Misrepresenting facts material to the transactions; and

  e.  Failing to disclose material facts.

In connection with the advisory relationship between the parties, Defendants owed the Plaintiff the highest duty of loyalty and to act in the utmost good faith and in Plaintiff's best interests. The Plaintiff reposed complete trust and confidence in Defendants both to render investment advice in accordance with his age, investment objectives and risk tolerance, and to conduct themselves at all times with the Plaintiff's best interests in mind. The relationship of trust and confidence between Plaintiff and the Defendants resulted in a fiduciary relationship.

As a result of the Defendants' breaches of fiduciary duty, Plaintiffs suffered damages in an amount exceeding the minimum jurisdictional limits of the Court. Plaintiffs are entitled to recovery of such damages, including economic damages, pre-judgment interest, costs, expenses and attorney's fees.

VII.

Breach of Contract

Plaintiff realleges and incorporates all of the allegations contained in paragraphs I through VI herein. The Defendants' handling of the Plaintiff's retirement funds violated the most fundamental concepts of suitability.  Defendants had the duty to recommend only those security transactions which were reasonably believed to be suitable for Plaintiff in

light of his financial situation, needs and objectives. Defendants clearly violated these suitability rules.  As a direct and proximate result of Defendants' breach of contract, the Plaintiff has sustained damages.

The Plaintiff and Defendants had a contractual agreement, which provided, inter alia, that Defendants would provide Plaintiff with investment recommendations and advice, which would be reasonable and suitable in light of their investment objectives, financial circumstances and needs, and would comply with all applicable rules, regulations and practices of FINRA and the NYSE.  The contract that Plaintiff entered into with Stein and BAS impliedly or explicitly stated that Defendants would comply with the state, federal and self-regulatory organization laws, rules and procedures.  FINRA Rule 2110 states that "[a] member, in the conduct of his business, shall observe high standards of commercial honor and just and equitable principles of trade."  Furthermore, IM-2310-2 ("Fair Dealing with Customers") states that "(a)(1) Implicit in all member and registered representative relationships with customers and others is the fundamental responsibility for fair dealing."  Defendants breached that contract when they made the inappropriate and unsuitable investment recommendations. As a direct and proximate result of Defendants' breach, the Plaintiff has suffered losses and damages.

Under Texas law, damages for breach of contract should compensate the Plaintiff by awarding him the value of the expected performance.  He is entitled to "benefit of the bargain" damages.  This would be the difference between the investment with interest at 9% per annum, and the value of what he received.

VIII.

## Negligence of the Defendants

Plaintiff adopts and incorporates all of the allegations contained in paragraphs I through VII herein.  Plaintiff would show that the Defendants were negligent and such negligence was a proximate cause of the Plaintiff's damages.

IX.

Common Law Fraudulent Misrepresentation and Fraud in the Inducement

Plaintiff incorporates by reference paragraphs 1 through VIII as fully as though set forth herein at length. Plaintiff would show that such conduct on the part of Defendants constitutes false and fraudulent misrepresentation of material facts. Defendants intentionally and/or negligently made various misrepresentations to Plaintiff which he relied upon in allowing Defendants to continue managing his accounts.  In order to induce Plaintiff to invest in these unsuitable investments, Stein  made material misrepresentations to the Plaintiff regarding the nature of the investments.  Also in order to induce Plaintiff to make the investments, the Defendants failed to disclose material facts to the Plaintiff. Defendants knew the representations were false or made the representations recklessly, as a positive assertion, and without knowledge of their truth. When Stein omitted to state material facts relating to the investment, he knew that Plaintiff was ignorant of the facts that he failed to disclose relating to the investments, and that Plaintiff did not have an opportunity to discover such facts.

Stein made the misrepresentations and omissions with the intent that the Plaintiff act upon them and make the investment. Plaintiff would not have allowed Stein to made the investments in the discretionary accounts  had he known the true facts. Once Plaintiff had been invested in the unsuitable stocks and risky strategy, Stein continued his pattern of making misrepresentations and omissions with the intent of preventing Plaintiff from knowing the true facts about the investments. Had the Plaintiff known the truth, he would have terminated the relationship earlier.

As a result, Plaintiff has suffered damages and economic injuries for which he seeks recovery, including exemplary damages to the extent his damages result from fraud. TEX. CIV. PRAC. REM. CODE §41.003 and TEX. BUS. & COM. CODE §27.01( c). Plaintiff is entitled to recover reasonable attorney's fees pursuant to TEX. BUS. & COM. CODE §27.01( c). The

Plaintiff have been damaged in an amount exceeding the minimum jurisdictional limits of the Court.

X.

**<u>Violations of the Texas Securities Act</u>**

Plaintiff would show that such actions on the part of Defendants violate the Texas Securities Act or "Blue Sky Law," Tex.Civ. Code Ann., Section 581-33. The Texas Securities Act prohibits material misrepresentations or omissions by sellers in the sale of securities. Plaintiff request all relief to which he is entitled under Section 581-33, including the consideration paid, rescission, interest and attorney's fees.

Section 33 of the Texas Securities Act, Vernon's Ann. Civ. St, Article 581-33 (2001), gives buyers the right to recover for material untruths or omissions in the sale of securities. Vernon's Ann.Civ.Stat. art. 581-33. Liability may be based not only on a false statement, but also on omissions to state a material fact necessary to make other statements not misleading. *Lutheran Bhd. vs. Kidder Peabody & Co., Inc.,* 829 S.W.2d 300, 306 (Tex.Civ.App. - Texarkana 1992), remanded at 840 S.W.2d 384 (1992). When there is a duty to speak, silence may be as misleading as a positive misrepresentation of existing facts. *Rowntree v. Rice*, 426 S.W.2d 890, 892 (Tex.Civ.App. - San Antonio 1968, writ ref. n.r.e.). A buyer who prevails may recover the consideration paid for the securities plus interest thereon at the legal rate from the date of purchase, less the value of the security at the time she disposed of it plus the amount of any income she received on the security. Consideration includes any commissions paid by the buyer. Under the Act, a rescinding buyer may recover the consideration paid for the security, plus interest at the legal rate from the date of purchase, less the amount of income received on the security. Prejudgment interest is recoverable on a rescission claim. *Russell v. French & Assoc., Inc.,* 709 S.W.2d 312, 315 (Tex.Civ.App. - Texarkana, writ ref. n.r.e.).

XI.

<u>Statutory Fraud under the Texas Business and Commerce Code</u>

Plaintiff adopts and incorporates all of the allegations contained in paragraphs I through X herein. Plaintiff would further show that the Defendants made false representations of past or existing facts made to Plaintiff for the purpose of inducing them to enter into the transactions and the Plaintiff relied on such representations in entering into the contract. Further, Defendants failed to disclose material facts. The representations and omissions violate Tex.Bus. & Com. Code §27.01.  Plaintiff suffered damages as a result of Defendants' misrepresentations. Furthermore, Defendants are liable to Plaintiff for exemplary damages because Defendants made the misrepresentations with actual awareness of their falsity. Even to the extent that the statements of Defendants were not fraudulent, they constitute negligent misrepresentations.  As a direct and proximate result of these violations, Plaintiff has been damaged in an amount exceeding the minimum jurisdictional limits of the Court, and he seeks to recover all damages, including economic loss, mental anguish and attorney's fees under §27.01 of the Texas Business and Commerce Code.

XII.

<u>Negligent Misrepresentation</u>

Plaintiff adopts and incorporates all of the allegations contained in paragraphs I through XI herein.

Plaintiff would show that such conduct on the part of Defendants constitutes negligent misrepresentation.  As a direct and proximate result of the negligent misrepresentations, Plaintiff has been damaged in an amount exceeding the minimum jurisdictional limits of the Court.

XIII.

Violations of the Texas Deceptive Trade Practices Act

Plaintiff incorporates all of the allegations contained in paragraphs I through XIV herein as fully as if set out herein.

The representations and omissions violate the Texas Deceptive Trade Practices - Consumer Protection Act ("DTPA"), V.T.C.A. Bus. & Com. Code §17.50, *et seq*. The acts of Defendants were false, misleading and deceptive and constitute violations of the DTPA. Furthermore, Defendants breached express and implied warranties, and engaged in unconscionable actions and/or courses of action. By such conduct, Defendants took advantage of the lack of knowledge, ability, experience or capacity of Plaintiff to a grossly unfair degree.

Such violations were committed knowingly and intentionally; Defendants were aware of the falsity, deception and unfairness of the conduct of which Plaintiff complains. Such conduct on the part of Defendants have caused the Plaintiff economic and mental anguish damages. Furthermore, the Plaintiff is entitled to recover treble damages in addition to his actual damages because the wrongful conduct of Defendants was committed knowingly and intentionally. As a result of the violations, Plaintiff has been damaged in an amount exceeding the minimum jurisdictional limits of the Court.

XIV.

**Discovery Rule**

Plaintiff affirmatively pleads that the discovery rule tolls the applicable statute of limitations for all causes of action in this case. The damages to Plaintiff resulting from Defendants' actions as set forth in this Petition were both inherently undiscoverable and objectively unverifiable.

XV.

Conditions Precedent

All conditions precedent to Plaintiff's recovery in this action have occurred or have been satisfied.

XVI.

Damages

As a direct and proximate result of the transactions and the Defendants' breach of contract, breach of fiduciary duties, negligence, fraudulent representations and violations of the statutes of Texas, the Plaintiff has suffered damages in an amount exceeding the minimum jurisdictional limits of the Court.

XVII.

Punitive and Exemplary Damages

Plaintiff would further show that the conduct on the part of Defendants was willful and wanton, intentional and done with reckless disregard for the rights of others, and as a result Plaintiff is entitled to recover, in addition to his actual and compensatory damages, punitive and exemplary damages.

XVIII.

Attorney's Fees

Plaintiff would further show that he is entitled to reasonable attorney's fees against Defendants, which Plaintiff says would be the sum of at least $75,000.00 for one trial or hearing hereof, and an additional sum of $50,000.00 if appealed to the Court of Appeals and the further sum of $50,000.00 if an appeal or *writ of certiorari* is filed with the Supreme Court of Texas, all to his damage in such amounts. Furthermore, without an award of attorney's fees, the Plaintiff will not be made whole or even made close to whole because he is contractually obligated to pay attorney's fees and costs out of any award that is

made.  Without agreeing to a contingent fee contract with her lawyer, the Plaintiff could not have prosecuted this action and he should not be punished for it. The law provides for the award of attorney's fees and costs in these kinds of cases to ensure that investors who have been defrauded, do not bear the costs of their victimization.

<u>Jury Demand</u>

Plaintiff respectfully requests a trial by jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Defendants be cited to appear and answer herein according to law, and that upon final hearing hereof, Plaintiff have and recover judgment against the Defendants, jointly and severally, for all of his damages, actual and compensatory as well as punitive damages, reasonable attorney's fees with conditional awards as alleged, pre-judgment interest as allowed by law, interest on the judgment at the highest lawful rate, all Court costs, and for such other and further relief, general or special, at law or in equity, to which he may be justly entitled.

Respectfully submitted,

LAW OFFICES OF RICHARD ELLIOTT

/s/ Richard Elliott

Richard H. Elliott
4709 West Lovers Lane
Suite 200
Dallas, Texas 75209
Telephone: (214) 358-7600
Facsimile: (214) 350-5064
Bar Card No. 06549500
*email address: lawdallas@aol.com*
ATTORNEY FOR PLAINTIFF